UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:24-cr-00136-MPB-TAB ) |
| RESHARD BENARD, | ) -01 ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL PRODUCTION OF PROBATION RECORDS**

Presently before the Court is Defendant Reshard Benard's Motion to Compel Production of Probation Records. [Dkt. 66.] Prior to filing this motion, Mr. Benard served multiple subpoenas for production of documents on this District's United States Probation Office ("Probation"), but Probation declined to produce any documents in response. Mr. Benard then filed the pending motion, which the Government opposes. [Dkt. 69.] For the reasons set forth herein, Mr. Benard's Motion to Compel is **GRANTED IN PART** to the extent that Probation shall produce to Mr. Benard a copy of any written records pertaining to the search of Mr. Benard's residence on or about June 25, 2024, no later than **February 7, 2025**. In all other respects, Mr. Benard's motion is **DENIED**.[1]

---

[1] In his opening brief, Mr. Benard requested a hearing on this motion. [Dkt. 66 at 1.] Because the briefing on this motion is sufficient for the Court's review and further factual development and legal argument is unnecessary, Mr. Benard's request for a hearing is denied.

# I. BACKGROUND

The background of this case and the residential search is set forth in detail in the Order Denying Mr. Benard's Motion to Suppress. [Dkt. 72.] The Court reiterates those factual findings as set forth below:

> In 2012, Benard was convicted [of] Conspiracy to Manufacture Cocaine Base and Possession of Ammunition by a Convicted Felon in the United States District Court for the District of Utah. (Docket No. 55-1 at ECF p. 3). Defendant's sentence included a ten year term of supervised release. (*Id.* at ECF p. 5). Benard was subjected to "standard conditions of supervision," which included, but was not limited to, the following:
> 
> - [T]he defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.
> 
> - [T]he defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
> 
> - [T]he defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
> 
> - [T]he defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
> 
> - The defendant shall submit his or her person, residence, office or vehicle to search, conducted by the probation office at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.
> 
> (*Id.*). Benard has been on supervised release since November 25, 2022. (Docket No. 53 at ECF p. 2). According to testimony during the suppression hearing, Defendant was under the supervision of U.S. Probation Officer Dylan Lybarger ("PO Lybarger") within the Southern District of Indiana.
> 
> On April 19, 2024, the Indianapolis Metropolitan Police Department ("IMPD") received a 911 call from an individual claiming that, during a road rage incident, a person matching Defendant's description and driving a car registered to Defendant flashed a gun at him. (Docket No. 55-2 at ECF p. 2). IMPD Officer Cody Elder later pulled over Benard, driving the same car described in the 911 call, roughly an

> hour later. (Docket No. 55 at ECF p. 2). Officer Elder ordered Defendant and his passenger out of the vehicle at gunpoint and performed a "frisk" of the vehicle. (*Id.*). Officer Elder looked for the weapon "under and between the seats as well as [in the] center console[.]" (Docket No. 53 at ECF p. 3). Officer Elder also looked in the glovebox, according to his testimony during the suppression hearing, and no firearm was discovered. He did not search the trunk or perform a full search of the vehicle. (Docket No. 55 at ECF p. 2). The other person in the car with Benard was a convicted felon, identified as Jacques Boyd. (*Id.*; Docket No. 55-2 at ECF p. 1). Officer Elder spoke with PO Lybarger about the incident on April 24, 2024. (Docket No. 55-1 at ECF p. 1). PO Lybarger had multiple conversations with Defendant following the police contact, but Defendant never report the incident. (*Id.*).
>
> Defendant was also pulled over by a Lawrence Police Department ("LPD") officer on May 20, 2024, and "received a traffic citation for speeding, unsafe lane change, and following too closely." (Docket No. 55 at ECF p. 3). A different individual was in the car with Defendant on this occasion, who was also a convicted felon. (*Id.*). On May 23, 2024, LPD Officer Agresta spoke with PO Lybarger about this traffic stop. (Docket No. 55-1 at ECF p. 1). Benard did not disclose this second law enforcement contact during a subsequent text message exchange with PO Lybarger the following day. (*Id.*).
>
> On May 29, 2024, PO Lybarger submitted a request to Probation supervisors to search Defendant's, and that request was granted. (*Id.*). PO Lybarger requested assistance from IMPD to conduct the search and the parties performed the search on June 25, 2024. (*Id.*). During the search a firearm was located, which serves as the basis for the indictment (Docket No. 1), and which Defendant seeks to suppress (Docket No. 53).

[*Id.* at 1-3.]

On July 16, 2024, Mr. Benard was indicted with one count of Unlawful Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1). [Dkt. 1.] Since his indictment, Mr. Benard has made multiple attempts to obtain his probation records, specifically seeking his probation officer's written request to search his home. First, he filed a Motion to Compel the Government to produce his probation records under Federal Rule of Criminal Procedure 16(a)(1)(E). [Dkt. 28.] The undersigned denied that motion because Probation is an "arm of the court" and not the "government," for purposes of Rule 16(a)(1)(E). [Dkt. 42.] Mr. Benard filed an objection, which was overruled by the District Judge. [Dkts. 49; 71.] Next, Mr. Benard filed a

3

Motion for Leave to Serve a Subpoena on Probation to request his records. [Dkt. 46.] The undersigned denied that motion as unnecessary, ruling that Mr. Benard did not need the Court's permission to serve a subpoena on Probation. [Dkt. 63.]

After his first two motions on this issue were denied, Mr. Benard served subpoenas on three probation officers requesting that they appear at the Motion to Suppress Hearing on December 11, 2024, and bring with them the following documents: "All supervised release records of the Defendant and any written records pertaining to the search of the [Defendant's] residence on or about June 25, 2024, including any request to search."[2] [Dkt. 69-1 at 1-3.] In an email with the Assistant United States Attorney who advised Probation in responding to Mr. Benard's subpoenas, defense counsel clarified that he was specifically seeking his probation officer's written "request to search my client's residence, including his explanation as to what formed his reasonable suspicion—there is a record of his 'request to search' which I am specifically requesting." [Dkt. 66-2 at 2.]

Requests for probation records and for probation employees to testify at court proceedings are governed by the Administrative Office of the United States Courts' Guide to Judiciary Policy, Vol. 20, Chapter 8 ("A.O. Regulations"). [Dkt. 69-2.] As relevant here, the A.O. Regulations provide as follows:

> In determining whether or not to authorize the disclosure of federal judicial information or records or the testimony of federal judicial personnel, the determining officer will consider, based on the following factors, the effect in the particular case, as well as in future cases generally, which testifying or producing records will have on the ability of the federal judiciary or federal judicial personnel to perform their official duties.

---

[2] Mr. Benard used this exact language in the subpoenas he sent to probation officers Jaime Roberts and Dylan Lybarger. [Dkts. 69-1 at 1, 3.] However, the subpoena he sent to probation officer Mark McCleese requests, "All supervised release records of the Defendant." [Dkt. 69-1 at 2.]

1. The need to avoid spending the resources of the United States for private purposes, to conserve the time of federal judicial personnel for the performance of official duties, and to minimize the federal judiciary's involvement in issues unrelated to its mission.

2. Whether the testimony or production of records would assist the federal judiciary in the performance of official duties.

3. Whether the testimony or production of records is necessary to prevent the perpetration of fraud or injustice in the case or matter in question.

4. Whether the request is unduly burdensome or is inappropriate under applicable court or administrative rules.

5. Whether the testimony or production of records is appropriate or necessary under the rules of procedure governing the case or matter in which the request arises, or under the relevant substantive law of privilege.

6. Whether the request is within the proper authority of the party making it.

7. Whether the request meets the requirements of these regulations.

8. Whether the request was properly served under applicable court, administrative, or other rules.

9. Whether the testimony or production of records would violate a statute, regulation, or ethical rule.

10. Whether the testimony or production of records would disclose information regarding the exercise of judicial or quasi-judicial responsibilities by federal judicial personnel in the decisional or deliberative process.

11. Whether the testimony or production of records would disclose confidential information from or pertaining to a presentence investigation report or pertaining to an individual's probation, parole, or supervised release, or would disclose any other information that is confidential under any applicable statute or regulation.

12. Whether the testimony or production of records reasonably could be expected to result in the appearance of the federal judiciary favoring one litigant over another, or endorsing or supporting a position advocated by a litigant.

13. Whether the request seeks testimony, records or documents available from other sources.

14. Whether the request seeks testimony of federal judicial personnel as expert witnesses.

15. Whether the request seeks personnel files, records, or documents pertaining to a current or former federal judicial officer or employee, and

    a. the personnel files, records or documents sought by the request may be obtained from the current or former federal judicial officer or employee in question, or

    b. the personnel files, records, or documents sought by the request would be made available to the requester with the written consent or authorization of the current or former federal judicial officer or employee in question.

16. Any other consideration that the determining officer designated in § 840(b) may consider germane to the decision.

[*Id.* at 7-9 (Guide to Judiciary, Vol 20, § 850(a)).]

Probation applied the A.O. Regulations to the requests for documents and testimony in Mr. Benard's subpoenas. [Dkt. 66-1.] Probation approved the request for all three probation officers to testify at the hearing on the Motion to Suppress but denied the request that they bring with them copies of Mr. Benard's probation records. [*Id.*] In denying Mr. Benard's request for probation records, Probation reasoned that the "request is overly broad based on the relevancy statement you provided and calls for all information contained in your client's files, which has no relevance to the search conducted on June 25, 2024." [*Id.* at 4.] Probation also stated that probation records are confidential and that providing Mr. Benard with his own probation records "may compromise the confidential nature of and relationship of trust between the probationer and the probation officer, and compromise the probation officer's ability to obtain honest and accurate information from the probationer." [*Id.*] Probation stated that producing Mr. Benard's probation records "would not assist [Probation] in the performance of its duties and may disclose the deliberative or decision-making processes of its employees." [*Id.*] Finally, Probation stated that

6

the probation officers' testimony at the hearing on the Motion to Suppress "is sufficient to provide relevant facts and information related to the search conducted on June 25, 2024." [*Id.*]

A hearing on Mr. Benard's Motion to Suppress was held on the afternoon of December 11, 2024. [Dkt. 68.] United States Probation Officers Dylan Lybarger, Jamie Roberts, and Mark McCleese each testified at that hearing. [*Id.*] The morning of the hearing, Mr. Benard filed a document titled "Appeal of Denial of Request for U.S. Probation Records." [Dkt. 66.] That motion was not fully briefed for the Court's review at the time of the hearing. Accordingly, at the time of the hearing, Mr. Benard did not have access to any of the probation records he subpoenaed. The Government filed a response opposing Mr. Benard's purported appeal on December 17, 2024, and Mr. Benard filed a reply brief on December 18, 2024.[3] [Dkts. 69; 70.]

In an Order dated December 23, 2024, the District Judge characterized Mr. Benard's purported appeal as being a Motion to Compel and referred the motion to the undersigned Magistrate Judge for a ruling. [Dkt. 71.] That same day, Mr. Benard's Motion to Suppress was denied. [Dkt. 72.] Mr. Benard's Motion to Compel, [dkt. 66], is now fully briefed and ripe for the Court's review.

## II. DISCUSSION

In opposing Mr. Benard's Motion to Compel, the Government first raises an issue of mootness, contending that the Court should deny his motion as untimely. Should the Court address the merits of Mr. Benard's request, however, the Government also opposes Mr. Benard's Motion to Compel on substantive grounds. The Court will first address whether Mr. Benard's request is

---

[3] The Government's response brief was filed by the same Assistant United States Attorney who assisted Probation in responding to Mr. Benard's subpoena. [*Compare* dkts. 66-1; 66-2 *with* dkt. 69.] That AUSA has also now filed a Notice of Attorney Appearance in this action on behalf of the Government. [Dkt. 64.]

moot, then set forth the applicable standard that applies to his motion, and finally address the merits of the substance of Mr. Benard's motion.

### A. Mootness

In its response brief, the Government argues that Mr. Benard's Motion to Compel is untimely and should be denied as moot. [Dkt. 69 at 3-4.] It notes that Mr. Benard received Probation's refusal letter on November 26, 2024, and that he did not file the present motion until December 11, 2024. [*Id.*] Because the suppression hearing has already taken place, the Government argues that there is no live case or controversy with respect to Mr. Benard's request for documents and that the motion should be denied as moot. [*Id.* at 4.]

In his reply brief, Mr. Benard argues that the issue is not moot. [Dkt. 70 at 2.] He states, "If the records reflected inconsistencies with the [probation officer's] testimony [at the hearing on the motion to suppress], the Defendant would certainly be able to file a motion to reconsider if this Court denied the suppression motion. Moreover, the records would be essential for purposes of appeal if the Defendant was convicted of the underlying offense." [*Id.*] He also argues that he has been diligent in his efforts to obtain these records since his indictment. [*Id.* at 2-3.]

The Court finds that the present motion is not moot and that it should be decided on the merits. The Government does not identify any legal authority imposing a specific deadline for Mr. Benard to contest Probation's refusal to comply with his subpoenas. He filed his Motion to Compel before the hearing on the Motion to Suppress took place, and he filed his reply brief one day after the Government filed its response. Mr. Benard has been diligent in his efforts to obtain these documents throughout this case, and the documents could still be introduced into the record in support of a subsequent motion or potentially at his jury trial in the case, which is currently set

8

for March 18, 2025. [Dkt. 76.] Accordingly, the Court finds that the issue presented by Mr. Benard is not moot, and it will proceed to the merits of his motion.

### B. Applicable Standard of Review

The Court next sets forth the standard of review for Probation's denial of Mr. Benard's request for documents. The A.O. Regulations that Probation relied on in denying Mr. Benard's requests are similar to regulations promulgated by executive branch departments under 5 U.S.C. § 301, which are called *Touhy* regulations, *see United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *Touhy* regulations govern how executive departments respond to requests for documents or requests to make their employees available to testify in court proceedings. *See St. Vincent Medical Group, Inc. v. United States Department of Justice*, 71 F.4th 1073, 1074 (7th Cir. 2023).

The Seventh Circuit Court of Appeals has held that when an executive branch department refuses to comply with a subpoena issued in state court, judicial review of that refusal is governed by the Administrative Procedure Act's ("APA") "arbitrary and capricious standard." *Id.* at 1075. It appears to be an open question regarding whether the arbitrary and capricious standard applies when a department refuses to comply with a subpoena issued in federal court. *See id.* (noting in dicta that some circuits apply Federal Rule of Civil Procedure 26(b)(1)'s principles of proportionality and relevance to discovery requests emanating from federal litigation). The Parties have neither directed the Court to any case that addresses the standard of review when a judicial agency refuses to comply with a subpoena pursuant to the A.O. Regulations nor to any case involving a refusal to comply with a subpoena issued in a federal criminal proceeding. Likewise, the Court's own research has not uncovered a case that specifically addresses the standard of review in these circumstances.

9

The Government asks the Court to apply the APA's arbitrary and capricious standard to Probation's refusal to comply with Mr. Benard's requests for probation records. [Dkt. 69 at 5-7.] Mr. Benard did not object to the arbitrary and capricious standard in his reply brief, and he has not advocated for an alternative standard of review at any point in the briefing. [Dkts. 66; 70.] Accordingly, the Court will apply the APA's arbitrary and capricious standard in reviewing Probation's refusal to comply with Mr. Benard's subpoena to produce documents.

Under the APA, a court may not reverse an agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Estate of Belbachir v. United States*, 2010 WL 3239444, at *3 (N.D. Ill. Aug. 13, 2010) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (internal citations removed)).

### C. Merits of Mr. Benard's Requests

Mr. Benard argues that Probation's refusal to comply with his request for documents was "nonsensical." [Dkt. 66 at 1.] He argues that Probation's explanation that his request was overbroad ignored that both his subpoena and a subsequent email to the Assistant United States Attorney advising Probation in responding to the subpoena included a specific demand for his probation officer's written request to search his home. [*Id.*] He also noted that Probation denied his request in order to protect a probationer's confidentiality, but that he is the probationer in question so that does not make sense. [*Id.*] Mr. Benard explains that he sought this document for

10

impeachment purposes and that there is no alternative way for him to establish his probation officer's pre-search articulation of reasonable suspicion. [*Id.* at 2.]

In response, the Government argues that Probation's refusal to comply with Mr. Benard's requests for documents was not arbitrary and capricious because Probation applied the A.O. Regulations to his request. [Dkt. 69 at 7.] It argues that denying the requests for documents as overbroad and irrelevant, seeking to protect Mr. Benard's privacy by refusing to provide him with his own records, and determining that disclosing those records did not advance Probation's interest all arose from the factors set forth in the A.O. Regulations and, therefore, are entitled to deference. [*Id.*] The Government also argues that Probation's determination that Mr. Benard could obtain the same information through his probation officer's testimony at the hearing on the Motion to Suppress was not clear error. [*Id.*]

In reply, Mr. Benard argues that the records he sought from Probation are relevant to his Motion to Suppress and to the fact-sensitive analysis that courts apply in considering the lawfulness of a warrantless search. [Dkt. 70.] He argues that law enforcement agencies such as FBI and DEA routinely provide defendants with their agents' written reports, which may be used to impeach those agents or other testifying witnesses. [*Id.* at 1-2.] He questions why Probation would shield similar reports written by its own officers in a criminal prosecution arising from Probation's warrantless search of a probationer's home. [*Id.*] He also questions how Probation can truly be an "arm of the court," as this Court has previously ruled, given that it has been working with an Assistant United States Attorney in refusing his request for documents. [*Id.* at 3.]

The Court begins by examining Probation's stated reasons for denying Mr. Benard's request for documents. Probation stated that Mr. Benard's document request was overly broad because it "calls for all information contained in [Mr. Benard's] files." [Dkt. 66-1 at 4.] This explanation

11

does not address the specific request that Mr. Benard made in his subpoena. While Mr. Benard did make a general request for "[a]ll supervised release records of the Defendant," he also made a more specific request in two of the subpoenas for "any written records pertaining to the search of [his] residence on or about June 25, 2024, *including any request to search*." [Dkt. 69-1 at 1, 3 (emphasis added).] Additionally, in a follow-up email to the Assistant United States Attorney who advised Probation on this matter, Mr. Benard clarified that he was specifically requesting his probation officer's "explanation as to what formed his reasonable suspicion—there is a record of his 'request to search.'" [Dkt. 66-2 at 2.] In applying this factor to Mr. Benard's document request, Probation failed to consider this specifically narrowed request, which would not have required Probation to provide Mr. Benard with his entire file as Probation stated in its refusal letter.

Probation reasoned that Mr. Benard's document request had "no relevance to the search conducted on June 25, 2024." [Dkt. 66-1 at 4.] This is clear error because a report articulating an officer's determination of reasonable suspicion for a warrantless search is clearly relevant to a hearing about the lawfulness of that search. Probation reasoned that communications between a probationer and his probation officer are confidential and that "[r]equiring an employee of U.S. Probation to disclose or testify regarding information he or she received from a probationer may compromise the confidential nature of and relationship of trust between the probationer and the probation officer, and compromise the probation officer's ability to obtain honest and accurate information from the probationer." [Dkt. 66-1 at 4.] This reasoning demonstrates clear error for a few reasons. First, in this case the person seeking the information is Mr. Benard himself. It is difficult to understand how Mr. Benard's privacy, confidentiality, or the relationship of trust he had with his probation officer could be eroded by providing him with the narrow subset of records requested in this case. Second, by the time Mr. Benard made his document request, he had already

12

been indicted on the new charge and was no longer being supervised by Probation because his supervised release had been revoked. [Dkts. 1; 27]; *United States v. Benard*, 1:22-cr-198, dkt. 7. Third, by the time Probation issued the refusal letter, it had already provided the Government with a document titled, "Timeline of Events." [Dkt. 37-1.] That document was created after the search had taken place, provides a chronology of events leading up to the search, and is part of the public record. [*Id.*] Furthermore, Mr. Benard's probation officer testified at a public hearing on the Motion to Suppress about the factors that led him to believe that there was reasonable suspicion to search Mr. Benard's home. Thus, the category of information Mr. Benard seeks in his subpoenas is already a matter of public record.

Probation reasoned that complying with Mr. Benard's request "may disclose the deliberative or decision-making processes of its employees." [Dkt. 66-1 at 4.] Again, the probation officer's determination that there was reasonable suspicion to search Mr. Benard's home is already a matter of public record. The Court is also not convinced by Probation's reasoning that the probation officer's written request to search Mr. Benard's home would simply be duplicative of testimony at the hearing. [*See id.* ("the testimony authorized above is sufficient to provide relevant facts and information related to the search conducted on June 25, 2024").] As Mr. Benard points out in his reply brief, Probation's written request to search his home could potentially provide impeachment evidence that contradicts the officer's hearing testimony. [Dkt. 70 at 1-2.] Probation did not consider the potential impeachment value of the written request and did not identify an alternative source of potential impeachment evidence. Given the multiple errors outlined herein, the Court concludes that Probation's refusal to provide Mr. Benard with the report requesting permission to search his home was arbitrary and capricious.

By contrast, however, Mr. Benard has not shown that Probation's refusal to provide him with his other supervised release records was arbitrary and capricious. As Probation stated in its refusal letter, documents that are unrelated to the search of Mr. Benard's residence have no relevance to the Motion to Suppress or the pending charge against Mr. Benard. Further, Probation's determination that producing the other documents would be unrelated to its mission and could disclose the deliberative and decision-making process of its employees is entitled to deference. Finally, Mr. Benard's briefing focuses exclusively on the report seeking permission to search his residence and does not address how Probation's refusal to produce other documents could prejudice him in this case. *See United States v. Butler*, 58 F.4th 364, 368 (7th Cir. 2023) (perfunctory and undeveloped arguments are waived).

In sum, the Court concludes that Mr. Benard's Motion to Compel is not moot and should be decided on the merits. The Court applies the APA's arbitrary and capricious standard of review to Probation's refusal to comply with Mr. Benard's request for documents. After doing so, the Court concludes that Probation's refusal to provide Mr. Benard with written records pertaining to the search of his residence on or about June 25, 2024, including any request to search, was arbitrary and capricious. In all other respects, Probation's refusal to produce documents was not arbitrary and capricious and, therefore, Mr. Benard's request for any additional records is denied.[4]

---

[4] The Court will briefly address Mr. Benard's assertion that Probation's reliance on advice from an Assistant United States Attorney in responding to his subpoena rebuts the Court's previous ruling that Probation is an "arm of the Court" and not the "government." [Dkt. 70 at 3.] The Court disagrees because the A.O. Regulations at issue allow Probation to move to quash a subpoena "through the Department of Justice, or with the assistance of retained legal counsel if the Department of Justice is unavailable." [Dkt. 69-2 at 9 (Guide to Judiciary Policy, Vol. 20, § 850(b)).] However, should Probation want to ensure in the future that there is not even the appearance of a conflict of interest, it could consider retaining outside legal counsel to assist with quashing the subpoena, utilizing a Department of Justice attorney who is not in the same district as the prosecuting attorneys in the case, or having the Department of Justice attorney assisting with

## IV. CONCLUSION

Mr. Benard's Motion to Compel Production of Probation Records is **GRANTED IN PART** and **DENIED IN PART**. [Dkt. 66.] No later than **February 7, 2025**, Probation shall produce any written records pertaining to the search of Mr. Benard's residence on or about June 25, 2024, including any request to search. Probation may designate those documents confidential if it believes that such a designation would be appropriate. If Probation designates those documents confidential, Mr. Benard must file them under seal if he chooses to file the documents in support of any subsequent motion or filing.

**SO ORDERED**.

Date: 1/31/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

---

quashing the subpoena submit an affidavit attesting that the attorney is not a member of the prosecution team.